## WILL WARTHAN v. THE STATE.

### No. 1967.  Decided January 10, 1900.

**1. Question to Witness—Hearsay.**

Where a question asked a witness is clearly erroneous and inadmissible which seeks to elicit matters purely hearsay, and should not be permitted, yet if it be answered in the negative it will not constitute reversible error.

**2. Improper Argument of Counsel—Practice on Appeal.**

If improper argument be indulged in by counsel, the proper practice is not only to object, but that a written charge should also have been asked and refused which instructed the jury to disregard it, before the court on appeal would make such illegitimate argument a basis for reversal. Before the court on appeal would interfere in such matter, it must also be shown that there was a very gross violation of the right of legitimate argument and that such violation was calculated to injure or impair appellant's rights.

**3. Special Instructions—Practice.**

Special requested instructions should be in writing; it is not sufficient if they be only suggested in the argument of counsel, and a failure to give them upon such suggestion only, is not error.

**4. Homicide in Defense of One's Place of Business—Force Used—Charge.**

On a trial for murder, where the defense was that the homicide was committed in defense of and to suppress a breach of the peace in defendant's place of business, and the court had already sufficiently charged upon the law of self-defense, covering

each issue, it was not error to fail to further charge as to defendant's right to arm himself with a pistol for such purpose and to put deceased and others out of the house, and that he could only be held amenable for the homicide in case he used more force than was necessary.

**5. Murder—Negligent Homicide—Weapon, Mode and Manner Used—Charge.**

On a trial for murder, where the charge of the court has sufficiently applied the law to the issues of negligent homicide and aggravated assault as presented by the evidence, it was not error to fail to further charge the jury as to the weapon used by defendant, and the mode and manner of its use by him.

**6. Same.**

On a trial for murder, where the only negligence shown was in the fact of defendant's having and using the pistol as he did, a charge of court was not too restrictive which confined the question of negligence to the acts of defendant alone, and which failed to combine his acts with the act of deceased in striking the pistol in the scuffle.

**7. Manslaughter—Adequate Cause—Charge.**

The adequate cause which is essential to reduce a homicide to manslaughter, whether it be one of those enumerated in the statute or constituted by causes not therein enumerated, is always a matter of law, and the better practice, where it can be done, would be for the court to group the testimony and put it to the jury as adequate cause, and especially should the court, where the evidence shows a cause enumerated by the statute, pointedly direct the jury to the very act which constituted it, and tell them in effect, as matter of law, such particular act was an adequate cause. In such a case a general charge as to adequate cause is insufficient, and the charge, to be sufficient, should be applied to the particular facts in the case.

APPEAL from the District Court of Red River. Tried below before Hon. E. S. CHAMBERS, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Barney Gray, on the 22d day of October, 1898, by shooting him with a pistol.

The defendant, Will Warthan, testified as a witness on his own behalf, and his testimony was as follows, viz.: "I am the defendant in this case. I live at Annona. I knew Barney Gray. He is dead. He was killed by a pistol held in my hand on October 22, 1898, at Annona, Red River County, Texas, and was killed accidentally. Tom McBride and I were in the restaurant business there, and on the night of the trouble McBride came into the house and said that Barney Gray, Ed Hutcherson, and others were over at Rusk's saloon drinking, and that Barney Gray had been cursing him. A little while after this Ed Hucherson came into our house drunk, and was cursing McBride' and talking very loud, and I told him to get out of the house. About this time Barney Gray came in and was doing some talking. He was drunk also. I then told them that I must protect my house, that they could not have any racket in there, and told them two or three times to get out of the house. As Hutcherson came in, I was behind the counter and saw that he was drunk, and that he had a pistol in his right-hand coat pocket. While the talk was going on, Barney Gray came up to me and struck me in the breast, and I struck at the side of his head and think I hit him with the pistol. I was striking again, when he came at me bent down, and he struck my hand or the pistol,

and the pistol fired. The pistol was a double-action pistol. I had nothing on earth against Barney Gray. We had been friends all the time. My only intention was to get him and Hutcherson out of the house, and I had no desire or intention to kill him. While Gray and I were having our trouble, Hutcherson was standing near by, and once or twice he made a motion as if to put his hand on his pocket, but he never drew the pistol. I left on a horse immediately after the killing and was gone about six weeks, and as soon as I made my arrangements to make bond I came home and surrendered at once. I left because I did not want to go to jail."

Cross-Examined: "I got my pistol out of the show-case as Ed Hutcherson came in and commenced cursing and swearing, and before Barney Gray came in. I got it to protect myself and my house. I went from here to Missouri, and then to a number of other places. I did not intend to kill Barney Gray. The pistol was fired accidentally."

Defendant's version of the occurrence was corroborated by some of the other witnesses who testified.

*J. C. Hodges* and *H. B. Birmingham,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at imprisonment in the penitentiary for a term of twenty years; and he prosecutes this appeal.

. Appellant placed George McBride on the stand as a witness in his behalf, and after his examination in chief the State asked him in regard to a conversation he had previously had with the district attorney, and among other things, this question was propounded: "Did you not tell me [meaning the district attorney] during the last term of this court, and a month or six weeks after Barney Gray was killed, that the Warthans had come to you to try to get you to help Will Warthan out, by swearing falsely, and said, if you would do so, that they would help your brother Jim McBride out; and did you not tell me [meaning the district attorney] at that time that you told them that you knew nothing that would help Will Warthan, and was not going to get mixed up in the matter; and did not the district attorney then ask you which one of the Warthans made you this proposition, and did you not then tell the district attorney that it was Mrs. Warthan, defendant's wife?" This question was objected to as being irrelevant and as being hearsay; the defendant not then being present, and not being bound by any conversation occurring between the witness and his wife. It appears that this objection was overruled by the court, and the witness answered in the negative; that is, that he had no such conversation with the district attorney. Clearly, the question here asked was inadmissible, as it sought to elicit matters purely hearsay,—the defendant not being present at the time; and, had the witness answered in the affirmative, it would have been error. But the

witness denied any such conversation. While the court should not
have permitted the question, yet the mere asking of the question,
when answered negatively, we do not believe was calculated to preju-
dice appellant,—certainly not to that extent requiring a reversal of
the case.

During the closing argument for the State, the private prosecutor,
representing the State, used the following language, to wit: "That
Jim McBride, a witness for defendant, had lied like a tombstone; that
they lied more than any other inanimate objects; but that there was
one that did not lie, and it was the plain shaft that was reared to
poor, humble Barney Gray, back in old Mississippi, and which had
upon it, 'Murdered at Annona, Texas, on October 22nd, 1898,'—if the
facts be true." While it is sometimes difficult to determine the lati-
tude which will be permitted in legitimate argument, we do not believe
it is ever permissible to go out of the record, and to state facts, and
not deductions merely from facts proven. In this case a fact was
stated by counsel, not in evidence; neither could it have been. It oc-
curs to us that the court should have reprimanded counsel, and have
instructed the jury to disregard the statement. However, no charge
was asked in this case on the subject, and the current of decisions indi-
cates that the proper practice would require that a written charge
should be asked and refused, before this court would make the illegiti-
mate argument the basis for reversal. Certainly, before we would feel
called on to interfere, it must be shown that there was a very gross
violation of the right of legitimate argument, and that such violation
was calculated to impair or injure appellant's rights. Young v. State,
19 Texas Crim. App., 536; Matthews v. State (Texas Crim. App.),
38 S. W. Rep., 172; Gilmore v. State, 37 Texas Crim. Rep., 178; Nor-
ris v. State, 32 Texas Crim. Rep., 172; Pennington v. State (Texas
Crim. App.), 48 S. W. Rep., 507.

Appellant, by his third and fourth bills of exception, complains of
the action of the court in refusing to give certain requested instruc-
tions. The court, however, certifies that no written instructions were
requested, and the suggestion of such instructions was only made in
the argument of counsel for appellant. Appellant further complains
in his motion for new trial that instructions were not given by the
court upon the subjects indicated in said bills. If the evidence raised
the issues embodied in said bills, and same was not covered by the
charge of the court, then appellant has some grounds of complaint.
The first of these bills suggests, in substance, that appellant had a
right to arm himself with his pistol to protect his place of business
and suppress a breach of the peace, and order deceased or others out
who were making such disturbances, and to use such force as was
necessary to put them out, and that he could only be held amenable for
the offense in case he used more force than was necessary. The
court gave a charge on self-defense, which we think covered this phase
of the case as presented by the evidence. Bill number 4 complains of
the action of the court in failing to charge the jury in regard to the

use of the pistol by defendant; that is, if the jury did not believe that
defendant by the use of the pistol intended to kill deceased, that de-
fendant could not be convicted of either murder or manslaughter, un-
less the injury inflicted upon deceased was inflicted in a cruel manner,
or unless they believed from the evidence that there was an apparent
intention on the part of defendant at the time of inflicting the injury
to kill deceased, etc.  The court charged on negligent homicide, and
also on aggravated assault; and, in our opinion, said charges presented
the law of the case, as applied to the evidence.  It is also complained
that the court's charge on negligent homicide was error, as being too
restrictive; confining, as it is claimed, the accident to the defendant
alone, and not combining his acts with the pistol with the act of the
deceased in striking the pistol in the scuffle.  We do not believe this
criticism of the charge tenable.  If there was any negligence in the
case, it was the negligence of the defendant in having and using the
pistol as he did, and not his negligence combined with that of the de-
ceased.

Appellant further assigns that the court erred in its charge on man-
slaughter; the contention being that the court's charge was entirely
too general, and that it failed to present to the jury the only adequate
cause shown by the evidence.  The court gave a charge to the jury on
manslaughter, which, after containing certain statutory provisions in
reference to passion and adequate cause, instructed the jury, substan-
tially, that the provocation must arise at the time of the commission
of the offense, and that any circumstances or conditions which would
arouse passion in the mind of a man of ordinary temper, sufficient to
render a person incapable of cool reflection, would be adequate cause,
and that the jury could look not only to the provocation at the time,
but to all the facts and circumstances surrounding the parties which
might have a bearing on the provocation at the time.  Now, the con-
tention of appellant is to the effect that the only evidence requiring
a charge on manslaughter consisted in the testimony of the defendant
himself and another witness, who stated that, just prior to the shoot-
ing, deceased, who had been ordered to get out of the house, advanced
towards defendant and struck him a blow in the breast, and that the
court, on this testimony, should have pertinently instructed the jury
that, if they believed from the testimony that deceased, prior to the
shooting, struck defendant a blow which caused him pain, and if they
believed his passion was thereby excited, and he was rendered incapable
of cool reflection, and under such circumstances slew deceased, then to
find him guilty of manslaughter.  We understand it to be the duty of
the court, in charging the jury, to instruct them upon the very phase
of the case suggested by the testimony.  The only issue presented by
the evidence requiring a charge on manslaughter was the provocation
which arose at the very time of the homicide.  This provocation was
the blow which, according to the testimony of defendant and another
witness, deceased struck him when he commanded him to cease the dis-
turbance and leave his premises.  Our statute makes a blow under cer-

tain conditions, adequate cause to reduce a homicide to manslaughter. The blow must cause pain, and must also engender passion which renders the mind incapable of cool reflection. Now, while it is true that the charge of the court was comprehensive enough to include the adequate cause here presented, was it sufficiently pointed to direct the attention of the jury to the very act of the deceased on which appellant predicated his defense of manslaughter? We think not. If the jury had been told that, as a matter of law, a blow which caused pain was adequate cause, this obstacle would have been removed from their pathway; and then it would have only been necessary for them to find that the blow was struck, and that it caused pain which rendered the mind of defendant incapable of cool reflection. As it was, they were left, without any suggestion from the court, to determine the matter of law in the first instance. See Wolfforth v. State, 31 Texas Crim. Rep., 387; Bracken v. State, 29 Texas Crim. App., 362. It has been held in a number of cases, and is the law in this State, that there may be adequate causes to reduce homicide to manslaughter, outside of those enumerated in the statute, or the provocation at the time may be intensified by matters occurring before that time, and in such a case the charge of the court should instruct the jury that they are authorized to consider such matters. But whether adequate cause is a matter of statutory definition, or is constituted by causes not enumerated in the statute, still the adequate cause is always a matter of law; and while in some cases it might not be necessary for the court to group the testimony, and put it to the jury as adequate cause, still, in the view of the writer of this opinion, whenever this can be done it would be the better practice to do so, and especially where the evidence shows one of the causes enumerated by the statute. It has been suggested, in view of our recent statute, which does not authorize us to reverse a case unless it be shown that the charge in question was calculated to prejudice his rights, that, no prejudice being shown, this cause should not be reversed. If there was no question as to this matter (that is, if we could accurately decide that the failure of the court to charge upon the particular phase of the case presented by the testimony was without prejudice to appellant), then the contention would be sound. But, as stated before, we are unable to decide that the jury knew, as a matter of law, that a blow inflicted on defendant, which caused pain and which provoked passion, was adequate cause to reduce the homicide to manslaughter. By the charge of the court the onus was cast upon them not only of ascertaining the other facts connected with this defense, but also of finding out the law on this subject. For aught that we know, the jury may have found that deceased struck the first blow, and that this caused defendant pain, and that his mind became excited, and was rendered incapable of cool reflection, and then shot and killed deceased; but they may not have believed that the assault of deceased was adequate cause, and so found him guilty of murder in the second degree. We would not be understood as holding that, under the facts, the jury were not authorized to find defendant

guilty of murder in the second degree; but we do hold that, under the peculiar state of facts proven on the trial, defendant was entitled to a charge on manslaughter, presenting the very phase of the cause on which he relied, and that the general charge given on this subject was not sufficient.   The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*