## PAUL GRAY v. THE STATE.

### No. 2986.   Decided November 30, 1904.

#### 1.—Murder—Evidence—Declarations of Third Parties.

Upon the trial for murder, the State should not have been permitted, over the objection of defendant, to introduce declarations of third parties with the deceased, in the absence of defendant, and relating to a different difficulty than the one which led to the homicide and in which former transaction the defendant took no part.

#### 2.—Same—Evidence—Intention of Deceased.

The declarations of deceased to a third party, after the former had had a difficulty with another than defendant, and preceding the transaction which culminated in the homicide, as to the intention of the deceased in going to the place where he was killed by defendant, were not admissible in evidence.

#### 3.—Same—Evidence—Declarations of Defendant—Res Gestae.

The declarations of defendant embracing the attendant facts of the homicide for which he was being tried, and which were made from five to fifteen minutes thereafter, while he was still nervous and excited, are res gestæ, and it was error not to admit them in evidence.

#### 4.—Same—Charge of the Court—Manslaughter.

Where the evidence showed that just after a difficulty between deceased and B., the latter went to appellant's drug store and was having his wounds dressed, and that in the meantime deceased came upon the scene and defendant told him not to approach B., when deceased resented defendant's interference and, according to the latter's statement, attacked him with a knife, the court should have instructed upon manslaughter as well as self-defense.

Appeal from the District Court of Coryell.   Tried below before Hon. N. R. Lindsey.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The testimony of the witness Bill Hampton as to the defendant's declarations, with reference to the homicide and how it occurred, and which the court ruled out, corroborated defendant's testimony and was the same in substance as related by the latter on the witness stand.   The opinion states the case.

*C. P. White* and *S. P. Sadler,* for appellant.—Now we submit that, whether the acts of Spencer and Bramlett during the difficulty were admissible or not, the defendant had the right to allow the State to prove the acts without objection.   But the defendant so allowing the State to prove the acts without objection, did not and ought not to preclude the defendant from objecting to inadmissible statements.   Let us see.   Here is an act done.   The defendant sees the act, but he did not hear what was said.   That act may create in his mind a certain belief.   Subsequently he is called upon to act in the light of the facts as he has seen them.   He construes the act which he saw a certain way.   Now is this court going to say that, in order to defeat his construction of the act, in order to defeat his view of the facts and circumstances which had previously taken place, and in order to defeat his knowledge and intention at

the time he acted, that the State will be permitted, over his objection, to prove the statement of a declaration of the parties made at the time the first act was done. We do not believe that this court will so hold, and we believe that if it does so hold, that it will be doing violence to the rights of the defendant.

The evidence shows in this record that the defendant saw Bramlett and Spencer fighting; that he did not know what took place between them; that he did not know whether Spencer was in the right or the wrong; that he did not hear what was said between the parties. Then, subsequently to the difficulty between Bramlett and Spencer, the defendant was informed that Spencer had cut Bramlett all to pieces. He was not informed as to what had been said by the parties during the fight between Bramlett and Spencer, or subsequent thereto. He only knew the one fact, that he had seen Bramlett and Spencer fighting; that he had been told that Spencer had cut Bramlett all to pieces. Now, in an incredible short space of time, Bramlett came in his back door bleeding. The defendant takes him out at the back of the store in the opposite direction to that where the fighting had taken place, and there, while washing Bramlett's hands, Spencer comes around. Now then, what had the defendant in his mind when Spencer came around? That Spencer and Bramlett had had a fight; that Spencer had cut Bramlett all to pieces with a knife, and nothing more. Now, is this court going to say and could the trial court say, that the conversation had between Spencer and Bramlett should be admitted to affect an act of the defendant done after Spencer came around behind his store, or that the declaration of Spencer, made to Scott expressive of his purpose for coming behind Gray's store, should be admitted to take from the defendant any right which he had? If these declarations were not admissible to curtail the defendant's rights at the time he shot Spencer, if they were not admissible for the purpose of showing the intent of the defendant at the time he shot Spencer, if they were not admissible to limit his right of self-defense, if they were not admissible as tending to show what the facts and circumstances were at the time the defendant fired the shot (viewed from the defendant's standpoint), then what were they admissible for? How could the declarations, made by Bramlett and Spencer, out of the presence of the defendant, affect his view of the facts and circumstances at the time of the homicide? Did he know that Spencer was coming around for a lawful purpose; did he know that Spencer had said he was going around there to get his wounds dressed? There is absolutely nothing in the testimony, nothing in the record, to show that the defendant knew anything about these matters, and yet the court permits them to be proved. McClure v. State, 53 S. W. Rep., 111; Fuller v. State, 30 Texas Crim. App., 559.

Statements of the defendant made to the witnesses, Bill Hampton and Mrs. Sallie Hampton, were res gestæ of the shooting of George Spencer and as such were admissible. Castillo v. State, 31 Texas Crim. App.,

145; Craig v. State, 30 Texas Crim. App., 619; McGee v. State, 31 Texas Crim. Rep., 71.

The court erred upon the trial of the above entitled and numbered cause to the injury of defendant in failing to give in charge to the jury all the law applicable to, and demanded by, the facts in evidence, in this: the court failed to charge the jury on the law upon manslaughter, because in this case the evidence tends to prove facts from which the jury might deduce a finding of manslaughter and the court should have charged the jury affirmatively upon this issue. Tollett v. State, 55 S. W. Rep., 573; Gilcrease v. State, 33 Texas Crim. Rep., 619; Polk v. State, 30 Texas Crim. App., 657; High v. State, 26 Texas Crim. App., 545; Childress v. State, 43 S. W. Rep., 100; Brande v. State, 45 S. W. Rep., 17; Bonner v. State, 29 Texas Crim. App., 223; Tow v. State, 22 Texas Crim. App., 175; Warthan v. State, 55 S. W. Rep., 55.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Conviction of murder in the second degree, five years in the penitentiary being assessed as the penalty. The homicide occurred on Christmas evening. Deceased had gone to the little town, where the homicide occurred, to attend a Christmas tree, but at the time he reached there the crowd had dispersed. He went up to the stores where some parties were gathered. As deceased, Spencer, rode up, Lewis and Bramlett were trying to fight, and deceased Spencer asked what was the matter. Scott replied, "Well, George Lewis and Nix (Bramlett) are trying to fight, and Nix jumped up and says, 'What is it to you, you God damn son of a bitch,' and Spencer hit him. Then George reached for a rock and Nix jumped behind Joe Dick Adams and said, 'Don't let him hit me with the rock,' and George Spencer said, 'What are you hitting me with?'" This was the testimony of George Lewis. The evidence further shows, in this connection, that the fight between George Spencer and Nix Bramlett was renewed in the house; and that during the trouble Spencer had received a cut on the face, and Bramlett was severely cut in several places; that the parties then separated. Objection was urged to the introduction of the declarations of the bystanders, in the absence of defendant. The court informed counsel that, if he objected to the acts of the parties, he would sustain their objection; but counsel stated they did not object to the acts, but did object to the declarations. The killing occurred at Gray's store, some distance away from where the first difficulty occurred between Spencer and Bramlett. It is a fact that appellant had nothing to do with the first difficulty, and the facts show he was not present, though the court says, in the qualification to the bill, that appellant was in such position that he might have heard what occurred; but it is nowhere asserted or contended that appellant had anything to do with the original difficulty. We believe this testimony was inadmissible. For a discussion of this subject, see Brumley's case, 21 Texas Crim. App., 222; Johnson v. State,

22 Texas Crim. App., 206; Ball v. State, 29 Texas Crim. App., 107; Fuller v. State, 30 Texas Crim. App., 559; McClure v. State, 53 S. W. Rep., 110.

By the same witness Lewis, the State was permitted to prove, after Spencer and Bramlett came out of Edwards' store, and after their separation in the absence of defendant, deceased Spencer said to Scott, "Scott, go get my horse and hat and I will go get the old doctor to fix this cut on my face."

This declaration was clearly inadmissible; and the testimony of Scott to the same effect ought also to have been excluded. See the authorities above cited. It may be well enough to state in this connection that after the difficulty between Spencer and Bramlett, Bramlett went to Dr. Gray's store, for the purpose of having his wounds dressed; that appellant was in partnership with his father, Dr. Gray, and was in the store at the time Bramlett entered; that he took him out of the store, got a pan of water and was washing the blood from his wounds, when Spencer came around the store, to where they were, and where the killing occurred. It is not necessary to add anything to what has been said in the cases cited as to the declarations, intentions, etc., of deceased when sought to be used against appellant.

Within from five to fifteen minutes after the homicide, in the house of witness Hampton, in the presence of Hampton and his wife, appellant made a statement in regard to the attendant facts of the killing. This was rejected by the court, and appellant reserved his exception. This seems to have been excluded by the court because immediately after the killing appellant had had a hurried conversation with Joe Dick Adams, in which Adams had advised him to get his horse and leave, and appellant remarked that he would not run away. Adams again advised him to get away from that immediate place. It was proposed to show by this witness that at the time appellant entered the houe he was white and nervous and very much excited; that immediately upon coming into the room he pulled down the window-shade, so as to prevent being seen in the house. We are of opinion that this testimony should have been admitted. Castillo v. State, 31 Texas Crim. Rep., 145; Craig v. State, 30 Texas Crim. App., 619; McGhee v. State, 31 Texas Crim. Rep., 71.

It is also contended that the court should have submitted a charge applicable to manslaughter. The following testimony is relied upon to suggest that issue. Appellant says he saw part of the previous difficulty between Spencer and Bramlett. "I saw Spencer get down off his horse and saw him strike Bramlet. I could not see the licks passing. Spencer and Bramlett fought out of doors and then went into the house and there were a few licks passed in there. I saw Nix Bramlett after the difficulty in our store. My father and myself own it. I was selling goods and waiting on the trade that day. The first time I saw Nix he was out in the road. He came in the back door of the store. He was bleeding all over and cut with a knife. I told him to get out of the store and I would get some water and wash him. He came in the back

door with Joe Dick Adams and Jim Hammack. Joe Dick asked where my father was, and I told him it would not be any use to wait for him, for he would be there as soon as he could get there. He said, 'this boy is bleeding to death.' I got a pan of water and stepped out there and was pouring water on his hands and washing him, and Bramlett was mad and cursing and telling what he would do when he got well, and Spencer came around the corner of the house and just as he came up Bramlett said what he would do when he got well; and Spencer said, 'You will play hell, God damn you.' I said, 'Go on away and let him alone, you have killed him already.' And Spencer spoke and said, 'God damn you, I am the man for you,' and he came around there with his hand raised ready to strike and kept coming on toward me with the knife. I had a pistol in my hip pocket, and I knew if I didn't shoot him he would kill me. I shot him because I knew if I didn't shoot him he would kill me. I said, as soon, and fired, 'God damn you, you can't curse me and come on me with a knife.' When I shot, Spencer sat down and fell backwards. He was stooping over when he fell. He was about six feet from me. After I shot, I turned away and walked to the corner of the house, and Joe Dick Adams jumped out of the door and grabbed me by the arm, and started off with me, and asked me if I had a horse, and I said I had; and he said, 'You have got to get away from here,' and I said, 'I am not going to run off.' He said, 'No, but you have got to get away from here.' Then he went back to see how bad the man was hurt, and I crawled through the fence, heard a noise, and stopped to see where the noise was, I just stopped long enough to get the direction, and then I went on to Hampton's house." He further testified in this connection, that he had twice stepped the distance he had traveled that night, and one time it took him five minutes and the other four and one-half minutes to travel the distance to Hampton's house, and that he traveled more rapidly the night of the homicide, because he was excited and in a hurry. We believe this testimony suggested the issue of manslaughter and it should have been given in the charge to the jury. There had been a separation of the parties and a clear abandonment of the difficulty by Bramlett when he went to the store. Appellant was apprised of the fact that Bramlett had been seriously cut by appellant, and was talking about it at the time Spencer appeared upon the scene. Appellant was not aware of the reason for Spencer coming upon the scene, and with the facts before him, he could have reached the conclusion that Spencer was following up the difficulty, with the intention of renewing it, and that when he interposed objection and urged him to go away, he turned upon him with the intention of engaging in a difficulty and using a knife. This, we think, presented both issues of manslaughter and self-defense. It may be also stated in this connection that the night was dark as shown by the testimony. Witness Joe Dick Adams, who was present at the homicide corroborated appellant in regard to the circumstances detailed by appellant in his testimony in regard to the facts and remarks. This is his statement: "When appellant saw Spencer coming up he remarked to Spen-

cer, 'Don't come up here George. You have cut this man all to pieces' now,' and Spencer said, 'Go to hell,' and he stepped up there and Gray shot him. Spencer was coming up toward Gray when he shot him. Gray said, 'You can't tell me to go to hell and come at me with a knife,' just after the shot was fired." Tollett v. State, 55 S. W. Rep., 573; Gilcrease v. State, 33 Texas Crim. Rep., 619; Polk v. State, 30 Texas Crim. App., 657; High v. State, 26 Texas Crim. App., 545; Bonner v. State, 29 Texas Crim. App., 223; Warthan v. State, 55 S. W. Rep., 55.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*