ANDY CRAWFORD v. THE STATE.

No. 1203. Decided January 17, 1912.

Rehearing Denied May 8, 1912.

**1.—Local Option—Charge of Court—Joint Sale.**

Where, upon trial of a violation of the local option law, the evidence did not raise the issue that the alleged intoxicating liquors were sold by the defendant to the party named in the indictment and another jointly, there was no error in refusing a charge on such issue asking an acquittal thereon.

**2.—Same—Continuance—Want of Diligence—Immateriality of Testimony.**

Where defendant's motion for continuance showed a want of diligence, and that the absent testimony was either immaterial or could have been established by other witnesses, there was no error in overruling his application and a motion for new trial on that ground.

**3.—Same—Evidence—Bill of Exceptions—Argument of Counsel.**

Where appellant complained of the introduction of his motion for continuance, and the bill of exceptions did not show any reason that he suffered injury thereby, but showed that his grounds of objection were not well taken, there was no error. Neither was there error in State counsel's argument thereon, no written charge having been requested to withdraw the same.

**4.—Same—Functions of Jury—Sufficiency of the Evidence.**

The jury are the exclusive judges of the facts in a criminal case, the credibility of the witnesses and the weight to be given to their testimony, and where, upon appeal from a conviction of a violation of the local option law, the evidence was sufficient to sustain the same, there was no reversible error.

**5.—Same—Information—Date of Election.**

Where defendant did not move to quash either the complaint or information in the court below on the ground that the date of the election by which prohibition was put in force in the county of the prosecution was not alleged thereon, he can not raise the question for the first time in his motion for rehearing in this court. Following Hamilton v. State, 145 S. W. Rep., 349, and other cases.

Appeal from the County Court of Wise. Tried below before the Hon. E. M. Allison.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

*R. E. Carswell* and *Trabue Carswell,* for appellant.—On question of court's charge on joint purchase: Dixon v. State, 21 Texas Crim. App., 517; Martin v. State, 19 S. W. Rep., 434; Presley v. State, 6 S. W. Rep., 540.

On question of refusing continuance: Polk v. State, 60 Texas Crim. Rep., 462, 132 S. W. Rep., 134.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—Upon complaint and information the appellant was charged with unlawfully selling to Estell Furlow intoxicating liquors on December 6, 1910. He was convicted and fined $50 and given thirty days in jail.

The State proved by said Furlow that he was twenty years old; that he lived and had lived for many years at Alvord, Texas; that on December 6, 1910, he bought from appellant one pint of whisky at Alvord, in Wise County, paid him one dollar for it; that John Graham was with him at the time; that he and Graham started from the main street of the town down to the Malone gin, situated about three hundred yards from the main street; that they met defendant coming from the gin and asked him if he had any whisky; that he denied it; then they told him they had to have some and were going to get it if it could be found. Appellant then said he might get it for them. "I saw a pint bottle in his overcoat pocket. I handed him a dollar and he took it and asked me to go to the gin with him. I went into the gin with him and he gave me the pint of whisky." This was in the forenoon, about 11:30 o'clock. Appellant took the whisky out of his pocket when he delivered it to the witness.

The other witness, John Graham, testified that he was twenty-one

years old, lived and had lived for many years on a farm with his mother, about one mile from Alvord; that on December 6, 1910, he was with said witness Furlow; that they started from the main street to the Malone gin and met the defendant about half way; that they proposed to buy some whisky from him; he first denied having any, but after awhile agreed to let them have it. Estell Furlow paid him a dollar; that he had paid to Estell Furlow fifty cents of the money uptown before they went down there. Defendant then went to the gin, Estell going with him. Graham remained where they were; that Estell returned with the pint of whisky.

Both of these witnesses testified that Mr. Ratliff, the county attorney of Wise County, had an arrangement with Furlow by which he was to catch bootleggers in Alvord and agreed to pay him $2.50 cash for every case reported to him and $2.50 more where the party was convicted. That when they got this whisky they marked the bottle, the date of the purchase and reported to Mr. Ratliff, who then paid Furlow; that he got John Graham to go into the matter with him as his partner and he divided with him half and half.

Furlow further testified that where they met the appellant at the time—half way between the gin and the main street—there was a lumber yard and houses close by, "and I suppose that was the reason defendant wanted us to go to the gin to get the whisky." It was admitted on the trial that what is known as the local option law had been in force in Wise County for many years before December 6, 1910, and was in force on that date.

Appellant himself testified that he had a family, wife and children, and then lived and had for many years lived in Alvord, in Wise County; that during the cotton ginning season of 1910, he worked at the Malone gin, except a portion of the time when he was employed by the government to get up gin statistic reports; that among other places included within the district where he had to procure these statistics, were Alvord, Decatur, Rhome, Boyd and Newark, in Wise County, and while he was not engaged in that work he was at work at the gin. Under his employment by the government to get these statistics he had to report on the 7th of each month; that on the 5th of December, 1910, he made his final round for that month, going to Boyd, Newark and Rhome, and returned, taking the train at Rhome on the morning of December 6, 1910, and reaching Alvord about 10 o'clock that morning; that he went directly from the depot to his house and went to work on his monthly report and stayed at home all that day working on the report; that he did not leave his house that day and did not go about the gin or to town and denied seeing either Furlow or Graham and denied selling to them or either of them any whisky on that or any other day; that he had no whisky, had been nowhere to get any; that all of the places he mentioned where he had been to get statistics were in Wise County and no whisky was kept or sold at either of those places so far as he

knew. He denied that either Furlow or Graham had ever given him any money for, or that he had delivered to them, any whisky; that R. L. Taylor was the foreman and manager of the Malone gin at and prior to December 6, 1910, and he worked under his direction when he worked at the gin, and when the gin was not in operation said Taylor stayed there and watched the gin; that it was not in operation on December 6, 1910.

The statement of facts shows that four persons, naming them, and many other citizens of Alvord testified that they had known appellant in and about Alvord for many years; knew his general reputation for truth and veracity and for being a peaceable and law-abiding and orderly man and that such reputation was good. The State also proved by Mr. Branch, the sheriff of Wise County, that E. M. Layton was present at the trial attending the court; that on January 7 he attempted to summon the witness Railey and found that he had left Wise County and gone to Hardeman County, and told defendant of that fact. It was admitted that no further process had been issued for that witness. The State also proved by Rev. Wells that he was a near neighbor of the witness Taylor, for whose absence the motion for a continuance was made; that he got butter and milk at Taylor's house and Taylor was at his house on January 7, 1911, and said witness' wife was up and at work at that time and Taylor was at work at a gin about one-fourth of a mile from his house and that on the morning before the trial he had seen her standing in Taylor's yard.

The State also introduced in evidence the appellant's motion for continuance, to which particular attention will hereafter be called.

Appellant complains of the action of the court in refusing to give his special charge to the effect that if the intoxicating liquors in question were sold by appellant to Furlow and Graham jointly to acquit the appellant. The evidence did not justify any such charge even though Graham testified he furnished to Furlow one-half of the money before they met the appellant with which the whisky was bought. Kennard v. State, 64 Texas Crim. Rep., 7, 141 S. W. Rep., 88; Miles v. State, 62 Texas Crim. Rep., 530, 138 S. W. Rep., 398, and cases cited in both of said cases.

Next appellant complains that the court erred in overruling his motion for a continuance or postponement of the case. This application to continue or postpone was made on account of the absence of R. L. Taylor, E. M. Layton and Tom Railey. The application first states that all the parties were residents of Alvord, in Wise County. It also states "that said Tom Railey resides in Wilbarger County, Texas;" that on January 6, 1911, he had a subpoena issued to Wise County for all three of those witnesses, he believing at that time that they all resided in Wise County, but that on January 7 he was informed that Railey had left there about ten days before that for Wilbarger County; that he expected to prove by Taylor and Layton as follows: "That at the time of the alleged sale of the

1912.] CRAWFORD v. THE STATE. 437

intoxicating liquors to Estell Furlow and for a long period prior thereto the defendant worked at the gin at Alvord, operated by R. L. Taylor, and worked under the observation and control and direction of said Taylor and said Taylor will testify that the general character of defendant for being a peaceful and law-abiding man in the community is good, and that he will further testify that during said time and at the time said liquor is charged to have been sold, this defendant kept no whisky or intoxicating liquors in or about said gin and did not handle any such liquors, these facts will become material on the trial of this case in view of the testimony of the said Furlow, who, defendant is informed and believes will testify that this defendant sold and delivered him the liquor in question at said gin and kept said liquor in said gin, and defendant expects to prove the same facts by the witnesses Layton and Railey, who worked at said gin, that is, that witness Layton worked at said gin and Railey was in and about said gin during the time said liquor was said by said State witness to have been sold and delivered." No reason is shown by the application for the absence of any of the witnesses, except Taylor; that Taylor was not there because his wife was sick and about to be confined and the witness was unable to leave her to attend this court.

One ground of the motion for new trial was the assigned error of the court in overruling said motion for continuance. As a part of the motion for new trial appellant attached the affidavit of said Taylor, who swore that he had known appellant intimately for the past two years; that he, Taylor, had had charge of and operated the Malone gin in Alvord, and that appellant worked under his constant direction and observation while appellant was so at work; that he knows the general reputation of said Crawford for truth and veracity and for honorable, law-abiding deportment and character and that it is good; that since affiant had been operating said gin said appellant had not kept any intoxicating liquors in or about the gin, to the best of his, affiant's, knowledge; that on December 6, 1910, affiant was at, in and about the gin, about 8 o'clock in the morning and until noon, when he went home for his dinner, returning to said gin about 1 o'clock p. m.; that it was his duty as operator of said gin to be and remain about it when not in operation, to care for it and see that no person came or loitered about and to see who came in and about it. That on December 6, 1910, the gin was not being operated and that while he was there appellant and Furlow and neither of them came to said gin or was in or about it while affiant was there; that if they had been there on said day about 11:30 o'clock a. m. he did not see them, to the best of his knowledge; that since appellant has been working at said gin, affiant has not seen or known of him having any intoxicating liquors in or about it; that he was summoned as a witness in this case in behalf of defendant to appear on January 9, 1911; that he did not attend on that or any

subsequent day, because his wife was in a delicate condition expecting to be confined in childbirth at any hour and her physician advised him to at all times remain in calling distance of her, and he was afraid to leave home to come to Decatur, a distance of fifteen miles, for fear she would be taken down in his absence and be unable to reach her in proper time. That his physician gave him a certificate in substance to that effect and he gave it to A. M. Stone, justice of the peace at Alvord, who was attending this court on January 9, 1911, and requested him to hand the same to the court; that appellant requested affiant to attend the court as a witness in his behalf and urged him to do so on January 9, 1911, and on the night of January 9, 1911, appellant again phoned to him at his home, urging him to come on January 10, and testify in his behalf, but under the advice of his physician he was unable to do so, and but for his wife's condition he would have attended court on January 9 and 10 and testified as set out in his affidavit.

The complaint and information were filed on December 15, 1910. As shown by appellant's application he had no process issued for any of his three absent witnesses until January 6, 1911. He was informed by the sheriff on January 7, 1911, that his witness Railey, about ten days before that, had gone from Wise to Hardeman County. He says in his application that he resided in Wilbarger County. The case was not tried until January 9 and 10, 1911. After being informed on the 7th that his witness Railey had not been subpoenaed he had no other process issued for him. If he had had process issued much earlier, which he could have done with certainty, and gotten this information in ample time to have gotten him from either Wilbarger or Hardeman County. No reason is shown why he could not have had process issued for him to either or both of those counties on January 7 and procured his attendance on the trial on the 9th and 10th of January following. So that as to said witness the application was wholly insufficient to show any diligence. Mitchell v. State, 36 Texas Crim. Rep., 299-300-307.

As to his witness Layton, it was shown by the testimony of the sheriff on the trial that he was in attendance on the court and present at the trial. The appellant did not introduce him, although in his application he swore that he could prove by him the same thing that he could prove by Taylor. In Blain v. State, 34 Texas Crim. Rep., 448, where it was shown that a number of witnesses had been summoned as to an issue and some of them were in attendance and not placed upon the stand, the appellant could not claim a continuance on account of the absence of other witnesses upon the same point, the court saying: "Defendant should have exhausted the testimony presented before he could claim a continuance on account of the absence of other witnesses upon the same point."

As to that part as to what appellant expected to prove by his witness Taylor as to his general reputation stated therein, this was

proven as shown by the statement of facts by four witnesses named therein and a large number of others and that fact was not disputed by the State; so that as to that there was no error in overruling appellant's motion for a continuance.

The State did not prove or attempt to prove on the trial that the appellant kept liquor in or about said gin and there was no evidence of the State tending to show that he did keep liquor there for sale. On the contrary, the State's testimony repelled such an idea. So that it was not necessary for appellant's defense that he have the witness Taylor there to testify to any such fact. Besides, as stated above, the witness Layton, by whom he said he could prove substantially the same thing, attended his trial as a witness, but the appellant did not introduce him to prove any such fact. It was also proven by the State on the trial that Taylor's wife was not sick, but was up and at work, and that said Taylor did not stay at his home, but was off at work as usual. His affidavit was made on January 17, and up to that time no showing made that his wife was in the condition he claimed she was in, and as the whole matter, under the law, was left to the discretion of the lower court in overruling the application for a continuance and not considering the matter again on the motion for new trial, we can not say that he has abused his discretion to such an extent, under all the circumstances, as to authorize or justify us to reverse this case on that account.

Again, appellant complains by bill of exceptions of the introduction by the State of his motion for a continuance, because it was irrelevant and immaterial to any issue in the case, and calculated to prejudice and improperly influence the jury in the consideration of the cause.

In this same bill, he objected to the argument of the county attorney in commenting upon the appellant's conduct, as shown by his said application for continuance wherein it was alleged that the county attorney had said: "You see how these bootleggers do: First announced not ready for trial and wanted to put off the case and delay the court, and in order to do so presented this motion for continuance (exhibiting the motion) and in it swore pine blank lies; said the witness Taylor could not be here because his wife was sick, when we know by the testimony of a witness here that she was standing in the yard of her husband yesterday morning, that is the way they do; first try to put off a trial as long as possible by any sort of pretext, whether true or not." The only complaint shown by his bill made to this is thus stated: "To which language defendant by his counsel objected and asked the court to stop counsel and withdraw such language from the jury, which the court refused to do, to which conduct defendant excepted." It will be seen by this that no reason is given showing that the appellant was in any way injured by this. In our opinion the introduction in evidence of appellant's motion for continuance, instead of in any way being cal-

culated to prejudice or improperly influence the jury against him would really have been in his favor. At any rate, the court did not err in not excluding it on the grounds of objection made thereto. Nor did the court err in not sustaining appellant's objections to the argument of the county attorney on the objections made, or rather because no specific objections were made. Besides this, the appellant did not request the court to give any written charge to the jury directing it not to consider the said remarks of the county attorney. Hatchell v. State, 47 Texas Crim. Rep., 385; Felder v. State, 59 Texas Crim. Rep., 144, 127 S. W. Rep., 1055; Kennedy v. State, 19 Texas Crim. App., 634; Lancaster v. State, 36 Texas Crim. Rep., 20. A great number of other cases might be cited, but it is unnecessary.

As we have had frequent occasion to say before, the law explicitly makes the jury the exclusive judges of the facts in criminal cases, the credibility of the witnesses and the weight to be given to their testimony. They hear and see the witnesses and have a very much better opportunity of judging of their truthfulness than any court can have from a mere transcript in writing of that testimony. It may be, as appellant contends, that he has been wrongfully convicted and that he ought not to be convicted on the testimony of the State. He has shown an unquestioned good character. The only legal question that can be based upon this subject is whether or not the record, as presented to us, shows that the evidence was sufficient to sustain the verdict, and where that is the case we are unauthorized to set aside a verdict and reverse a case. If it were otherwise and this court, in contested matters of fact, could, from the record, decide the question differently from what the jury did, then this court would be usurping an express power given to the jury and the judge of the lower court and this court and not the jury in the lower court would have to judge of the credibility of the witnesses and the weight to be given to their testimony. No such authority is given to this court.

There being no reversible error shown, the judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

#### May 8, 1912.

PRENDERGAST, Judge.—For the first time, appellant, by his motion for rehearing, urges that the complaint and information are fatally defective in this cause, because the date of the election by which prohibition was put in force in Wise County is not alleged therein. Appellant made no motion to quash either the complaint or information in the court below on that account, nor in any other way in the lower court, nor in this court, until his motion for rehearing raised the question. This court has fully considered this question and held against appellant in the cases of Meyer v. State, 145 S. W. Rep., 919, and Hamilton v. State, 145 S. W. Rep., 349,

wherein the question was fully discussed and the authorities cited. It is unnecessary to again discuss the question.

All the other questions, again presented by the motion for rehearing, were discussed and correctly decided against appellant in the original opinion. It is unnecessary to discuss any of the questions again.

The motion is overruled.

*Overruled.*