## GEORGE LANE V. THE STATE.

### No. 2709. Decided January 21, 1914.

### Rehearing denied March 11, 1914.

**1.—Murder—Evidence—Motive.**

Upon trial of murder there was no error in admitting testimony to show defendant's adulterous relations with the wife of the deceased, some time before the homicide, in order to prove motive on the part of the defendant.

**2.—Same—Evidence—Bolstering Up Testimony.**

Upon trial of murder there was no error in admitting testimony of adulterous relations between defendant and the wife of the deceased, and that the witness who testified thereto told a third party about it, as the State did not attempt to introduce any other witness to bolster up the statement of such State's witness that he had made it to said third party.

**3.—Same—Evidence—Moral Turpitude.**

Upon trial of murder, on cross-examination of the defendant, there was no error in permitting the State to ask him and require him to testify that he was convicted of an assault to murder and sentenced to the penitentiary in 1903 for two years; the instant offense being charged to have been committed in 1912, the court properly limiting said testimony. Following Oates v. State, 67 Texas Crim. Rep., 488, 149 S. W. Rep., 1194.

**4.—Same—Continuance—Want of Diligence—Cumulative Evidence—Depositions.**

Where the bill of exceptions showed a want of diligence to procure the absent testimony and that the same was cumulative in character, there was no error in overruling the application for continuance. An accused can not be compelled to take depositions.

**5.—Same—Witness Under Rule.**

The question of placing a witness under the rule is within the discretion of the court, and where no abuse of discretion was shown, there was no reversible error.

**6.—Same—Evidence—Letter.**

Where, upon trial of murder, the State introduced a certain letter purporting to have been written by defendant to the wife of the deceased showing undue intimacy between them, and the jury were instructed not to consider same unless the letter was written by the defendant, there was no reversible error. Following Gonzales v. State, 31 Texas Crim. Rep., 508, and other cases.

**7.—Same—Charge of Court—Motive—Article 743, Code of Criminal Procedure.**

Where, upon trial of murder, the court properly charged on the different degrees of murder, manslaughter and self-defense and threats, and further instructed the jury that the testimony relating to the relations of the defendant with deceased's wife was admitted only on the question of intent and motive, and no objection was made to this paragraph of the court's charge when given, there was no error under article 743, Code Criminal Procedure.

Appeal from the District Court of Shelby. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Davis, Davis & Davis,* for appellant.—On question of bolstering up testimony, motive and charge of court thereon: Red v. State, 39 Texas Crim. Rep., 414; Holmes v. State, 52 id., 352; Kirksey v. State, 58 Texas Crim. Rep., 188, 125 S. W. Rep., 15.

On question of court's charge on intent and motive: Beard v. State, 57 Texas Crim. Rep., 323, 123 S. W. Rep., 147; Stewart v. State, 153 S. W. Rep., 1151; Parnell v. State, 51 Texas Crim. Rep., 620; Rice v. State, 49 id., 569; Kirk v. State, 35 id., 224; Nelson v. State, 43 id., 553.

On question of admitting testimony as to adulterous relations between defendant and wife of deceased and statements of witnesses to each other: Gilcrease v. State, 33 Texas Crim. Rep., 619; Skelton v. State, 51 S. W. Rep., 943; Stell v. State, 58 S. W. Rep., 75; Woodward v. State, 42 Texas Crim. Rep., 188.

On question of introducing letter: Johnson v. State, 27 Texas Crim. App., 163; Taylor v. State, 50 Texas Crim. Rep., 381; Templeton v. State, 57 S. W. Rep., 831.

· *C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree and his punishment assessed at ten years in the penitentiary.

We think it unnecessary to give any extended statement of the evidence. The preponderance of it, and that by disinterested witnesses, shows that appellant waylaid and assassinated deceased. Appellant claims self-defense and defense because of threats by deceased to kill him, claiming that deceased was undertaking at the time to execute his threats. Both of these matters were fully and completely submitted in his favor in every way that the evidence justified or suggested. He makes no complaint of the charge of the court in any of these particulars. Appellant concedes that the theory of the State was that he had for a long time previous to the killing sustained improper relations with the deceased's wife, and that the killing grew out of such relations.

We think the evidence establishes that the deceased made many threats to kill appellant, both to appellant and other persons, and that such threats to others were communicated to him. There is evidence in the record that the appellant likewise made threats to kill the deceased. The testimony clearly shows that a state of hostility existed between these parties for some time and·up to the very time of the killing and that each, from time to time, recently before the killing, went more or less armed, or had arms at different times with the view of killing the other.

Appellant assigns several errors which are raised and presented by bills of exception and they each are included in and made a ground of his motion for new trial.

By one bill appellant objected, for various reasons, to the testimony of the State's witness Leon Cartwright "that at Saint James Church

on Friday night preceding the homicide, which occurred on the following Thursday, that the defendant gave to the wife of the deceased, Judie Redmon, a condrum." The court, in allowing this bill, qualified by stating:

"It was the theory of the State in this case that the defendant, George Lane, killed Ed Redmon on account of relations which defendant had with deceased's wife and to get possession of the woman; and, as a circumstance, the State offered to prove that shortly before the homicide, something like a week, at a church where all the parties were present, that the defendant gave Ed Redmon's wife a condrum, and had certain other conversations with her at the time, which are shown in the statement of facts. This testimony was admitted, over the objection of the defendant, because it was believed to be material and admissible as a circumstance tending to show the theory insisted upon by the State."

By another bill appellant complained that the court permitted Leon Cartwright to testify that on Friday night preceding the homicide, which occurred on the following Thursday, that he saw appellant give Judie Redmon, deceased's wife, a condrum, and that Ed Redmon, deceased, afterwards on the same night asked him about it, and that when Ed Redmon asked him about the condrum he told him about it and about appellant's connection with it, and that he did not tell appellant of this conversation he had with Redmon concerning the condrum; that appellant asked him about it on Sunday morning before the killing Thursday and he then told appellant that he had not told the deceased about it.

By another bill appellant complained of the court admitting testimony of the State's witness R. P. Price, "that sometime in 1911—about March, 1911, about eighteen months prior to the homicide in connection with which the defendant was on trial for murder, he came upon the defendant George Lane and Judie Redmon, the wife of the deceased, in flagrante delicto; that George Lane was on top of Judie Redmon, and raised up off of her and told the witness he would give him two bits not to tell it; that they were lying down there and George was on top of her." The court approved this bill with the qualification that this testimony, circumstantially, like the other, tended to show the relations between the defendant and deceased's wife as furnishing the motive for the killing.

By another bill appellant complains that the court permitted the State to inquire, and him to testify, over his objections, as follows: "I have heard it reported in the neighborhood that for some time preceding the killing Ed Redmon's wife and I had been on intimate terms; it was reported that I am the father of one of her children. I have heard prior to the killing that it was the talk over the neighborhood that she and I were intimate, and that I was the father of one of her children."

These bills present kindred evidence and we will discuss them together.

Judge White says: "Facts tending to show a motive, though remote,

are admissible in evidence. Dill v. State, 1 Texas Crim. App., 278; Jones v. State, 4 Texas Crim. App., 436; Rucker v. State, 7 Texas Crim. App., 549." Our statute, article 1, C. C. P., says that the object the Code seeks is: "4. To bring to the investigation of each offense on the trial all the evidence tending to produce conviction or acquittal." White's C. C. P., sec. 1072; Belcher v. State, 71 Texas Crim. Rep., 646, 161 S. W. Rep., 459. Judge White also says: "Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis,— a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable." See other pertinent rules laid down by Judge White applicable to this question wherein he cites the cases in support thereof in his Ann. C. C. P., sec. 1070. In section 1231, p. 451, in his Ann. P. C., Judge White also says: "Defendant's adultery with the wife of deceased may be shown to establish his motive for the killing. · Ex parte Mosby, 31 Texas, 566; Spearman v. State, 34 Texas Crim. Rep., 279." Under these rules and the issues in this case all this evidence objected to, was admissible.

By another bill appellant complains that the State was permitted to prove by its witness Price that after he had caught the appellant in flagrante delicto with deceased's wife, "I told Leon Cartwright something like a week or two weeks after that." Appellant contends that this evidence was inadmissible because, as he had not impeached Price's testimony, nor shown that he had made contradictory statements, that the State could not bolster up Price's testimony in this way, and he cites in support of his contention section 875 of Branch's Crim. Law and the cases cited therein by Mr. Branch. We think these cases, and Mr. Branch's text, are inapplicable to this question. The text of Mr. Branch and cases cited by him are to this effect: That the State would not be permitted to bolster up its witness by permitting it to introduce other witnesses to show that the witness who testified had told them soon after the occurrence, the same state of fact that he was then testifying on the stand, unless such witness were impeached or the appellant had shown that he made contradictory statements. In this case the State did not attempt to introduce any other witness to so bolster up said Price's testimony. If the State had attempted to do so, and the court had permitted it, then a material error would have been committed against appellant, but this bill presents no such question.

Appellant testified. On cross-examination to affect his credibility, the court permitted the State to ask him and require him to testify that he was convicted of an assault with intent to murder on August 12, 1903, sentenced to the penitentiary for two years, which he served. This was objected to because too remote. Appellant having served two years under said conviction, he would have been out of the penitentiary only since August 12, 1905. This offense was alleged and shown to have been committed August 15, 1912, and as contended by the State was be-

cause of his illegal conduct with the deceased's wife, begun some eighteen months prior to this homicide and apparently kept up from that day till the actual homicide. The court properly limited the effect of this testimony as for impeachment only. The evidence was properly admitted for that purpose. Oates v. State, 67 Texas Crim. Rep., 483, 149 S. W. Rep., 1194.

By another bill appellant complains that the court erred in overruling his motion for continuance. The motion for continuance is contained in this bill and is quite lengthy. It is unnecessary to copy it or state it. The court, in allowing the bill, qualified it by stating that this case "was set down for trial a week or ten days before it was finally tried. A witness for the State had a sick child, and the State was unable to go to trial when the case was re-set, the venire ordered back, the witnesses ordered back; and at that time the court notified the parties that if there was any sick witness or any witness that could not come by reason of sickness—in that case the parties could take their depositions, because he expected the case to be tried, it having been tried at a former term of the court, resulting in a mistrial. The State offered to cross any interrogatories and waive time and permit them to be taken; and when the case was called for trial, at the time at which it was tried, the defendant presented this application for continuance. The State notified the defendant that they would cross these interrogatories to the defendant's wife and other witnesses and permit them to be taken at once. The trial lasted three or four days, and both parties were given opportunity to get this testimony if they wanted it. Further, the court believed that the testimony was cumulative and not material, and that no diligence had been used. The witness Maggie Fisher, one of the witnesses contained in the application, was present and did testify." This bill shows no error under this qualification. An accused can not be compelled to take depositions.

By another bill of some length the appellant complains that the court permitted one Spart Jordan to remain in the courthouse during the trial, although he had been summoned by the defendant as a witness and the rule invoked and enforced as to all other witnesses. In allowing this bill, the court qualified it by stating: "That after the witnesses were sworn the defendant insisted that the witness Spart Jordan should be excluded and put out of the courtroom and put under the rule. The State stated that they would not introduce Mr. Jordan as a witness; but the district attorney then in charge of the case having been newly elected and it being his first appearance in the case, the former district attorney who tried the case before having retired, the district attorney stated that he desired the assistance of Mr. Jordan to advise with him and inform him about facts in the case, and would not use him as a witness introduced by the State, and that if the defendant desired to use him they might do so, without any objection upon the part of the State that he had not been under the rule. Under these circumstances the court thought that it was proper and right to permit the State to have any

assistance that Mr. Jordan, as no other party, could suggest to the then district attorney. The court asked the defendant if they expected to put him on the stand, and they said they did not. Neither party desiring Mr. Jordan as a witness, he was discharged from the rule. Some of the matters stated in the bill of exceptions with reference to Mr. Jordan's connection and all are disapproved, as there was no testimony whatever to show that Mr. Jordan had done anything improper in connection with the trial of the case." Such matters, under our statutes and the decisions thereunder, are under the discretion of the court. The court, in this instance, clearly shows he did not abuse his discretion and the bill presents no error. Section 767, White's C. C. P., and cases there cited.

By another bill appellant complains of the action of the court in permitting the introduction by the State of a letter purporting to have been written by him to the deceased's wife. If the letter was written by him to the deceased's wife, it would have a tendency to show an undue intimacy and familiarity between appellant and deceased's wife. Appellant denied that he wrote the letter, but there was considerable testimony as to his handwriting and that of the letter being the same, and other circumstances which justified the court to permit the letter in evidence as stated by him in his qualification of appellant's bill. His qualification is: "That when this letter was offered in evidence by the State as a letter written by the defendant to the deceased's wife as a circumstance tending to show their relation, and thereupon show a ground for motive for the homicide, there were certain witnesses who testified, by comparison, to the writing, and other circumstances in connection therewith—declarations of the defendant to Coleman; conversations by the defendant about the letter, and the absence of the deceased's wife at Center, a different place from where the deceased lived.. Under these facts and circumstances, the jury were instructed that if they believed the letter was written by the defendant that they would consider it, otherwise they would not—in other words, the question of the genuineness of the letter was left to the jury, with all the facts and circumstances offered in evidence, and this the court understood to be the rule." Gonzales v. State, 31 Texas Crim. Rep., 508; Hunt v. State, 33 Texas Crim. Rep., 252; White's Ann. P. C., sec. 1231, p. 452.

For various reasons appellant objected to this one paragraph of the court's charge: "All testimony which has been admitted before you relating to the relations of defendant with deceased's wife, was admitted only for the purpose of enabling you the better to pass upon the issue of intent and motive of the defendant at the time of the killing, and for no other purpose, and you will so consider the same." This is the only complaint of the whole charge of the court. The court gave a full, complete and unobjectionable charge, submitting every question raised properly to the jury for a finding. He charged upon and submitted murder in the first degree, murder in the second degree, manslaughter, self-defense and also self-defense in connection with threats at the time

of the homicide. He also charged reasonable doubt and the doubt be-
tween the different degrees of the homicide. No objection was made
to this paragraph of the court's charge when given. He asked no charge
on the subject. Under the statute, article 743, Code Criminal Procedure,
which prohibits this court from reversing a case unless an error was
calculated to injure the rights of the defendant, the giving of this charge,
under the facts and circumstances of this case, even if said paragraph
should not have been given, does not present such error as would author-
ize or require this court to reverse.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 11, 1914.—Reporter.]