### J. H. Sanford v. The State.

#### No. 4003. Decided April 5, 1916.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficient to support a conviction of murder, there was no reversible error.

**2.—Same—Continuance—Want of Diligence—No Reversible Error.**

Where, upon trial of murder, defendant's application for a continuance was based upon several grounds neither nor any of which was sufficient to entitle him to a continuance, there was no error in overruling the same.

**3.—Same—Contempt of Attorney—Bill of Exceptions.**

Where the record on appeal showed that the court below threatened to imprison for contempt, one of appellant's attorneys but did not do so, this matter, in the absence of a bill of exceptions, showing that it resulted in injury to the defendant, can not be considered.

**4.—Same—Affidavit—Bill of Exceptions—Practice on Appeal—Bystander's Bill.**

Where the record on appeal showed that for some reason nearly the whole of the ninety days for preparing the statement of facts and bills of exceptions was consumed before they were filed, and the trial court qualified some of the exceptions, etc., and there appeared various affidavits of the defendant's attorneys in the record with reference to these bills of exceptions, raising different grounds of objections, all of which affidavits were made before one or the other

of appellant's attorneys, and these affidavits could not be construed or have been intended as a bystander's bill, but seemed to have grown out of the friction between the trial judge and one of defendant's attorneys, the same can not be considered on appeal. Following Mooney v. State, 76 Texas Crim. Rep., 539; 176 S. W. Rep., 52, and other cases.

### 5.—Same—Evidence—Letter—Bill of Exceptions—Motive.

Where, upon trial of murder, the State was permitted over the objection of defendant to introduce in evidence a certain letter from the wife of deceased to the defendant showing the illicit relations existing between them prior to the homicide, which tended to show motive on part of defendant for the killing, there was no error even if the trial judge refused outright to approve defendant's bill of exceptions thereto. Following Lane v. State, 73 Texas Crim. Rep., 266, and other cases.

### 6.—Same—Cross-examination—Defendant as a Witness.

Where, upon trial of murder, the State claimed motive on part of defendant for killing deceased on account of illicit relations between him and the wife of deceased, and defendant testified that on a certain occasion he had caressed and fondled the hand of deceased's wife, or rather that she had begun it, and it was also in evidence that shortly before the killing defendant had told another of receiving letters from deceased's wife, and the circumstance of caressing her hand, etc., there was no error in permitting the State, on cross-examination of defendant to refer to these matters, and ask him the question if he did not tell the woman who had caressed his hand and written him letters, about her husband trying to kill him, etc.; besides no answer was given by the defendant.

### 7.—Same—Bill of Exceptions—Practice on Appeal.

Where the bill of exceptions did not show that any answer was made by defendant to the question whether his wife didn't testify that deceased made no reply to a certain remark of defendant, and the qualification of the judge to the bill was that defendant emphatically denied that his wife so testified, there was no reversible error.

### 8.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions showed no answer of the defendant with reference to a question asked him by the State as to a certain letter from the wife of deceased, and the qualification thereto showed that defendant did answer that he did not understand the letter, there was no reversible error.

### 9.—Same—Bill of Exceptions—Practice on Appeal.

Where the bill of exceptions did not show any answer to the State's question to defendant whether he heard his daughter testify that she had told him what deceased had said to her, and the qualification showed that the only objection defendant made was that his daughter never testified to any such thing, there was no reversible error.

### 10.—Same—Bill of Exceptions—Practice on Appeal.

Where the record showed that the defendant made no reply or objection to the question asked him by the State as to the declaration of the wife of deceased to the defendant that she would be the happiest woman on earth if the deceased was only out of the way, there was no error. Following Huggins v. State, 60 Texas Crim. Rep., 214, and other cases.

### 11.—Same—Cross-examination—Discretion of Court—Rule Stated.

Considerable latitude must be allowed in the cross-examination of any witness and to a large extent such matters must be left to the sound discretion of the trial judge. Following Stevens v. State, 7 Texas Crim. App., 39, and other cases.

**12.—Same—Bill of Exceptions—Evidence.**

Where the State was probably not authorized to ask the question that it was a day in which the farmers were busy in the fields, but the bill of exceptions did not claim on what ground this was immaterial, and the court qualified the same by stating that the question was never answered, this presents no error.

**13.—Same—Motion for New Trial—Misconduct of Jury—Affidavit.**

Where defendant's motion for new trial claimed improper conduct of the jury, but the same was not sworn to by him, and the affidavits of others attached thereto were all sworn to before one of defendant's attorneys, and besides the court heard evidence and overruled the motion, there was no reversible error; besides said affidavits were void. Following Maples v. State, 60 Texas Crim. Rep., 169.

**14.—Same—Motion for New Trial—Bill of Exceptions—Practice on Appeal.**

In the absence of a bill of exceptions or a statement of the facts in the record filed within term time which showed the testimony heard by the trial judge on `defendant's motion for new trial as to the misconduct of the jury, this court must presume that the testimony heard justified the court below to overrule the motion. Following Black v. State, 41 Texas Crim. Rep., 185, and other cases, and an alleged statement of facts of such testimony, or which may have been intended as such stuck in the main statement of facts, but not signed, approved, or filed, can not be considered, and if considered presents no error.

**15.—Same—Evidence—Cross-examination—Remarks by Judge.**

Where appellant claimed that he asked a State's witness on cross-examination that his statement would only be a supposition on his part, that the scars he spoke about on the bush were made there by a shot, and that the court said that the witness could describe the scars and tell how they looked to him if they looked like shot had struck them, to which the witness replied that there was no shot in them at the time, and it appeared from the bill of exceptions that no objection was made to the testimony, the court's remark presents no reversible error.

**16.—Same—Evidence—Bill of Exceptions—Location of Wounds.**

Where the bill of exceptions showed no answer of the witness as to the location of the wound and objection thereto, it presents no error.

**17.—Same—Bill of Exceptions—Evidence—Location of Wound.**

Where, upon trial of murder, the physician who examined the deceased testified for the State to the location of the wounds and their entry into the body of deceased, there was no error; besides the bill of exceptions was defective. Following Waite v. State, 13 Texas Crim. App., 169.

**18.—Same—Evidence—Habits of Deceased.**

Where, upon trial of murder, defendant testified that just before and at the time he first shot deceased, he thought that deceased was attempting to open a small hand bag or grip and draw a pistol therefrom, etc., there was no error in permitting the State to show that deceased was afflicted with asthma, and that when he was to be away from home any length of time he always took with him said hand bag in which he carried asthma medicine, etc.; besides the court qualified the bill by stating that no objections were made.

**19.—Same—Evidence—Bill of Exceptions.**

Where defendant complained that one of his witnesses testified that she told defendant that the daughter of deceased told the witness that the deceased had a gun to waylay the defendant, etc., there was no error in permitting the State to prove that these statements were not made by the witnesses; besides, bill of exceptions as qualified shows no error.

**20.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions failed to show the materiality of the testimony of defendant's daughter as to the whereabouts of her father when the shots were fired which killed the deceased, or what the answer of the witness would have been, there was no reversible error, especially as qualified by the judge.

**21.—Same—Evidence—Declaration of Deceased.**

Where the declaration of deceased with reference to carrying a small hand bag with him were ruled out as hearsay, this presented no error.

**22.—Same—Evidence—Cross-examination—Moral Turpitude.**

Upon trial of murder where defendant introduced a witness who gave material testimony for him, there was no error to permit the State on cross-examination of said witness to bring out the fact that he had been indicted and convicted for an assault with intent to murder, and the court should not have sustained an objection thereto.

**23.—Same—Evidence—Declarations of Defendant—Bill of Exceptions.**

Upon trial of murder, there was no error in permitting the State to prove the declaration of defendant as to his intention to kill the deceased made a few days before the homicide, and this although it became necessary and proper to include the statement of the witnesses to the deceased at the time of said declaration; besides the bill of exceptions is defective.

**24.—Same—Evidence—Bill of Exceptions—Habits of Deceased.**

Where, upon trial of murder, defendant claimed that the deceased, just before he shot him, had a small hand bag in his hand from which defendant thought deceased drew a pistol, there was no error in admitting testimony that the deceased when he left home just before the killing was dressed as usual, and the only thing he had with him was a small hand bag in which he carried asthma medicine, a funnel and a saucer which he used to inhale the smoke from the medicine; besides the bill of exceptions is defective.

**25.—Same—Bill of Exceptions.—Evidence.**

Where the record showed that the testimony which defendant claimed was excluded by the court was in fact admitted, there was no error; besides the court refused to give the bill of exceptions because the State made no objections to said testimony.

Appeal from the District Court of Tarrant. Tried below before the Hon. Ben M. Terrell.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Simpson & Estes,* for appellant.

*C. C. McDonald,* Assistant Attorney General, and *Marshall Spoonts,* County Attorney, for the State.—On question of bystander's bill: Washington v. State, 58 Texas Crim. Rep., 345.

On question of affidavit before attorneys: Osborne v. State, 56 S. W. Rep., 53, and cases cited in opinion.

On question of admitting letter in evidence: Ingram v. State, recently decided, and cases cited in opinion.

On question of declarations of defendant: Brooken v. State, 9 S. W. Rep., 735, and cases cited in opinion.

On question of bill of exceptions: Mirando v. State, 50 S. W. Rep., 714.

On question of motion for continuance: Morrison v. State, 51 S. W. Rep., 358; Deckard v. State, 58 Texas Crim. Rep., 34, 124 S. W. Rep., 673.

On question of misconduct of jury: Armstrong v. State, 34 Texas Crim. Rep., 248.

On question of cross-examination of defendant: Gallan v. State, 177 S. W. Rep., 124; Collins v State, 178 S. W. Rep., 345; Terrell v. State, 174 S. W. Rep., 1088; McHenry v. State, 173 S. W. Rep., 1020.

On question of qualification of bill of exception: Hiles v. State, 73 Texas Crim. Rep., 17, 163 S. W. Rep., 717.

On question of testimony brought out on cross-examination by defendant: Tores v. State, 74 Texas Crim. Rep., 37, 166 S. W. Rep., 523.

PRENDERGAST, Presiding Judge.—Appellant was convicted of murder, and his punishment assessed at life imprisonment.

The record and statement of facts are quite voluminous. We have carefully studied both. There is no necessity of giving a detailed statement of the testimony. It was amply sufficient to show that appellant and deceased were both tenants on a farm near Mansfield. That both were married and had families. They lived only several hundred yards apart. Deceased, C. T. Thompson, was rather an old man, considerably older than appellant, and was living with his second wife. Some short time prior to the homicide, appellant and deceased's wife carried on a frequent, amorous correspondence, each writing to the other frequently, and each delivering to the other in person their letters. They were also often together at deceased's house and going back and forth therefrom to public gatherings. Sometimes appellant would see deceased's wife at her residence when deceased was away. On one occasion at least, when they were in the wagon, on the same seat, others in front, appellant took hold of and fondled, with her consent, deceased's wife's hand. Deceased learned of said correspondence, and doubtless by observation and otherwise became aware of the attachment between them. It seems the families of both, as well as the nearby neighbors also became aware of the attachment between them, and there is testimony tending to show that because thereof appellant's wife quit him for a while, and his daughters also left his home. Deceased thereupon forbade appellant coming to his house at all, accusing appellant of the correspondence between him and his wife, and their attachment also, and became very greatly incensed because of their conduct. The feeling between the two men became rather bitter, one towards the other. It was shown that appellant deliberately made up his mind to kill deceased, and told some of his friends so. He also deliberately prepared himself, procured the ammunition for that purpose, and killed deceased therewith, shooting deceased with large shot from a double-

barreled shotgun, one taking effect in deceased's side, eye and face; the other, in his back and neck, when deceased was in the public road going from his home to Mansfield, and in about one hundred yards from appellant's house.

On the other hand, appellant introduced other testimony and his own to the effect that deceased had repeatedly threatened to kill him, which threats were communicated to him, and at the time he shot deceased, as he thought, he got a pistol out of a little handbag, or grip, which deceased was carrying with him at the time. He also claimed that deceased the day before had used some language which could be considered insulting to one of his daughters. His testimony, and his alone, clearly raised the issue of self-defense from claimed apparent danger. The court also submitted manslaughter in his behalf.

The testimony of each side showing their theories was more or less contested by the other. The witnesses giving testimony on appellant's side were mostly himself and the immediate members of his family. Most of that by the State was of disinterested witnesses, their neighbors. Evidently, the jury believed the State's side, and we think the preponderance of the testimony was considerably in favor of the State and against the appellant. Evidently they did not believe the testimony of appellant and his side, or they would have acquitted him on his claim of self-defense, or found him guilty of only manslaughter. All these matters were for the jury, and not for this court.

Appellant made an application for a continuance on the grounds of the absence of Bryan Bennett, who was then in a hospital because of a broken leg and could not attend; of the absence of Jewel and Alford Cathey, who had not been subpoenaed; that he had been unable to procure from the court stenographer, because of the serious illness of the stenographer, a transcript of the evidence of four witnesses for the State, deceased's wife, one of his sons, Mr. Fielder and Mr. Buttrell, who had testified on a habeas corpus hearing he had had trying to get bail; and because the county attorney had refused to let him have or see a letter from deceased's wife to him which was taken off of his person when he was placed in jail on the day of the killing, and the court had on that day refused his motion to require the county attorney to let him have and see said letter. The State contested his application, and it seems the court heard evidence on it at the time, and overruled it.

Appellant was arrested and placed in jail on September 20th, the day he killed the deceased. At the time he was placed in jail the jailers found on him, and took a letter from deceased's wife to him, and turned it over to the county attorney. The grand jury indicted him four days later. He had a habeas corpus trial for bail. The date thereof is not given. He and his attorneys were both present thereat and heard all the witnesses testify—the four the transcript of whose testimony he wanted. All four of these witnesses were present at his trial. All of them except deceased's son testified. Early in the trial the said letter was produced, identified and introduced in evidence. It

was shown that no diligence was used to secure the testimony of the Catheys, and that they were not in Texas, but in Oklahoma. By agreement between the State and appellant, the affidavit of the witness Bennett was introduced as his evidence instead of having him personally present to testify. No sort of injury is shown, or attempted to be shown, by appellant because he did not get a transcript of the testimony of the said witnesses on the habeas corpus hearing; nor his not being furnished on the very day the trial began a copy of said letter. Neither any, nor all, of his grounds were sufficient to entitle him to a continuance. The court did not err in overruling it. There is no order in the record showing that the court overruled his motion to require the county attorney to let him see said letter or have a copy of it. Of course, it would have been proper for the court to have required the county attorney to show him said letter, or furnish him a copy thereof; but even if the court refused his motion, it was no ground for a continuance at that late hour.

The record shows that at one time only during the trial, which lasted several days, did the court threaten to imprison for contempt one of appellant's attorneys. It does appear that at this one time the court did so start to punish one of his attorneys, but that before he did so, he retired the jury, and it seems, after discussion of the matter by the attorneys for both sides and the court, the court determined not to so punish the attorney, and did not do so. Thereupon, the jury was brought back, and the trial proceeded to a conclusion. Appellant has no bill complaining of this contempt proceeding and no bill complaining that any of it had any effect or resulted in any injury to him.

The record also shows that the appellant for some reason took the whole ninety days, which is the greatest time that could be allowed, for preparing the statement of facts and bills of exception. That on the ninetieth day he tendered all the bills and statement of facts to the trial judge for his action, and that the judge acted on them. The attorneys for both sides agreed to and signed, and he approved, the statement of facts. He went over the bills, some twenty-two in number, and acted upon each, on most of them making qualifications to, and explanations of, them, referring to the statement of facts therefor frequently. Some, however, he expressly refused, because he stated no objections were made and no bill taken at the time. The record does not make it certain whether the bills, after the judge's action, were turned over by the judge to the clerk or turned back to appellant's attorney. In either event, they were at once, and on said last day, filed by the clerk. After the judge's action on the bills, in one instance, on the same day they were filed, one of appellant's attorneys filed his affidavit and had the affidavit of another person to be also made and filed pertaining thereto. The next day the affidavit of one or the other of appellant's attorneys, and sometimes two others only, and at other times, three others, made affidavits pertaining to other of said bills. We will state the substance of these affidavits. They were practically duplicates of one another, the only difference being that they would

name the number of the different bills to which they applied. The attorneys' affidavit was to the effect that when a certain piece of evidence was offered by the State and objected to by him, he then offered to state the grounds and reasons of his objections, but the court refused to permit him to then do so, stating that he might insert the grounds and reasons of his objections later, after the completion of the trial. That if the court had permitted, he would at the time have stated his objections and reasons. The affidavits of these three other persons were to the effect that when appellant's attorneys would make objections to testimony being admitted or excluded, the court would instruct the attorney to be seated and make no objections; that the court would allow them to take a bill to any testimony they desired and incorporate whatever objections they desired in the bill; and that, on some occasions, the court would threaten said attorneys with a jail penalty unless they obeyed his instructions. In each and every instance where the affidavit of either of said three other persons was made, they were sworn to before one or the other of appellant's said attorneys, and no one else.

We state these latter two matters in order to show that there arose during the trial friction between the trial judge and appellant's attorneys, or rather one of them, and probably because of this, the said affidavits pertaining to said bills were made and filed. In no instance does appellant by his attorneys or otherwise pretend to make a bystander's bill; and the affidavits, and none of them, can be construed to mean, or be intended for, a bystander's bill. It is always to be deplored that any such friction between the trial judge and the attorneys in any cause should arise. Under the law and the decisions these affidavits can not be considered by us. Mooney v. State, 76 Texas Crim. Rep., 539, 176 S. W. Rep., 52; Maples v. State, 60 Texas Crim. Rep., 169, and cases there cited. It is unnecessary to collate the many decisions of this court following the Maples case. There are a large number of them.

Appellant's first bill claims that he objected to the introduction by the State of said letter from deceased's wife to him. Mrs. Thompson swore that she wrote and delivered the letter to appellant. He also so swore. Deceased's daughter swore that the letter was in the handwriting of her mother. Appellant in his claimed bill states that he made several objections, stating them, to the introduction of said letter. The court refused to allow the bill, stating that the record does not show that any objections were made or taken to its introduction, and no objection whatever was made or taken to its introduction when offered and read in evidence. In the letter Mrs. Thompson enjoins upon appellant great care, stating she feared there was going to be trouble because of appellant's wife's jealousy of them. That she did not know what to do for the best; that she felt for him, and her sympathy was with him; that if things did not get better she would advise him to leave at once. "If he (deceased) was just only out of the way, I would be the happiest woman on earth." And she tells him not to

notice her much in her husband's presence, as he was suspicious of them, and advises him to burn her letters at once, just like she does his; "and then there will be none to lose, or for someone to find them." In closing, she hopes and prays that everything will work out for their good, and signs: "With love." Of course, as the judge refused outright to approve this bill, we can not properly consider it; but even if the court had allowed it with all of appellant's objections to its introduction, it unquestionably was 'admissible and material, as tending to show motive at least on appellant's part for the killing. Ex parte Mosby, 31 Texas, 566; Spearman v. State, 34 Texas Crim. Rep., 279; Lane v. State, 73 Texas Crim. Rep., 266; White's Ann. P. C., sec. 1231; White's C. C. P., sec. 1070, and following sections. So that if the court was in error in refusing the bill, the evidence was admissible if the bill had been allowed.

In his bills Nos. 2, 3, 4, 7, 8, 9 and 10, he objected to certain questions asked appellant by the State on its cross-examination of him. Appellant in his direct examination, in effect, testified that, on the occasion mentioned above, he had caressed and fondled the hand of deceased's wife or rather she began it, and he joined her therein. Mr. Curry had testified that shortly before the killing appellant had told him of receiving letters from deceased's wife and the circumstance of caressing her hand and had also taken her letters out of his pockets and read part of them to him, in which she was cautioning appellant that they must not notice each other so much in the presence of others, but it made no difference where he would go or what would happen, he could always remember that there was one who remembered him and cared for him. And he himself had testified that the woman had fondled his hand instead of his fondling hers, but he participated therein. Under such circumstances, there was no error in the court permitting the State to ask him: "You did not tell the woman who had caressed your hand and written you letters about her husband trying to kill you? And yet she thought so much of you that she sent word to you to be careful and not raise any suspicion for fear of trouble, and wrote you that no matter what happened that she, the wife of another man, was going to always love and stick by you?" as shown by his bill No. 2. No answer is shown to have been made by appellant to these questions. And somewhat like questions asked him about Mr. Curry had said along the same line in bill No. 3, it showing that no answer was made by appellant to the questions.

Neither is any error shown by his bill No. 4, wherein this question was asked him: "Didn't your wife testify that deceased made no reply to that remark of yours in the back yard?" as the bill does not show that any answer was made by him to the question; but, in the qualification, the judge states that in his answer he emphatically denied that his wife did so testify.

Nor does his bill No. 7, wherein the State asked him what Mrs. Thompson had reference to in said letter to him by using a short expression therein quoted from the letter, the bill showing no answer

of appellant thereto, but the qualification showing that he answered: "I did not understand what they meant. I did not understand the letter. I do not know what it meant." So that, in no contingency, whether he answered at all or answered as he did, the bill presents no error.

Nor does his eighth bill, wherein he was asked if he heard his daughter testify that she had told him what Thompson had said to her that evening at Angel's house, the bill showing that no answer was made, and the court stating that the only objection he made was that his daughter never testified to any such thing.

Nor does his bill in asking him: "And that was the woman that had said that about you and written you, 'if he was just only out of the way I would be the happiest woman on earth.' She wrote you that in that letter?" to which he made no reply, the court stating that the record does not show that he made any objection to that question.

All these questions were asked appellant on cross-examination, and we think they were legitimate cross-examination of him under the circumstances, and that none of them present any error. Huggins v. State, 60 Texas Crim. Rep., 214; Morrow v. State, 56 Texas Crim. Rep., 519; Phillips v. State, 59 Texas Crim. Rep., 534; Hart v. State, 57 Texas Crim. Rep., 21; Warthan v. State, 41 Texas Crim. Rep., 385; Sweeney v. State, 65 Texas Crim. Rep., 593, and many other cases. The law, further, is that considerable latitude must be allowed in the cross-examination of any witness, and to a large extent such matters must be left to the sound discretion of the trial judge. Stevens v. State, 7 Texas Crim. App., 39; Thompson v. State, 11 Texas Crim. App., 51.

The State was probably not authorized to ask this question, shown by his bill No. 10: "It was a day in which the farmers were very busy in their fields, wasn't it?" The court states that the only objection they made to this question was that it was immaterial and prejudicial, but the court says the question was never answered, and the bill does not claim that it was. This may have been immaterial, but it was in no possible way prejudicial to appellant and in no event presents any error.

Appellant made a motion for a new trial, containing some eighteen or more grounds. He has a bill (No. 6) to the overruling of this. We never consider such bills. However, in his said motion, among other things, he claimed improper action and remarks of the jurors, unnecessary to particularize. Appellant himself neither signed nor swore to his motion, or any ground thereof. There are three affidavits attached to this motion attacking the action of the jury: one, by one of appellant's attorneys; and the other two, by outside parties. All three were sworn to before one of appellant's attorneys, and no one else. The record affirmatively shows that the court had witnesses before him and had them to testify on these matters raised by his motion, doubtless having most, if not all, of the jurors, and other witnesses, and after hearing all the evidence overruled his motion. All this shows no error. In the first place, the said attacking affidavits were in effect void, as

has many times been held by this court in a uniform line of decisions. (Maples v. State, 60 Texas Crim. Rep., 169.) Second, there is no bill of exceptions in the record filed within term time which shows the testimony heard by the judge on this motion; nor is there any statement of facts agreed to and approved by the judge filed at all, showing said testimony. Under such circumstances this court must presume, and does, that the testimony heard clearly justified the court to overrule his motion. Black v. State, 41 Texas Crim. Rep., 185, 53 S. W. Rep., 116; Reinhard v. State, 52 Texas Crim. Rep., 59, 106 S. W. Rep., 128; Jarrett v. State, 55 Texas Crim. Rep., 550, 117 S. W. Rep., 833; Mikel v. State, 43 Texas Crim. Rep., 615, 68 S. W. Rep., 512; Williams v. State, 56 Texas Crim. Rep., 225, 120 S. W. Rep., 421; Probest v. State, 60 Texas Crim. Rep., 608, 133 S. W. Rep., 263; Tarleton v. State, 62 S. W. Rep., 748; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967; Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996. See, also, Jordan v. State, 10 Texas, 502; Sharp v. State, 6 Texas Crim. App., 650. We find stuck into the statement of facts of the main trial, between the last two pages thereof, what may have been intended as a statement of facts heard on the hearing of said motion, but it is signed and agreed to by no one, and not approved by the court. It was not filed separately, and if ever filed at all, it was included only in the filing of the statement of facts on the main trial on the ninetieth day after the overruling of said motion. In no event can it be considered. Besides if that statement could be considered it would show all of his attacks were disproved, and none of them established.

Appellant's bill No. 11 claims that he asked the State's witness Fielder, on cross-examination, this question: "That would only be a supposition on your part that the scars that you speak of on the bush were made there by shot?" The court: "He can describe the scars and tell how they looked to him, if they looked like shot had struck them." The witness answered: "There were no shot in them at that time. Mr. Morrison was with me at the time. He is the constable there." Appellant claims that he objected to what the court said, claiming that it was upon the weight of the testimony. The court says, in allowing the bill, that there was no objection by appellant to the testimony. Surely what the court instructed the witness would present no reversible error. (Collins v. State, 77 Texas Crim. Rep., 156, 178 S. W. Rep., 357, and cases cited; McHenry v. State, 76 Texas Crim. Rep., 273, 173 S. W. Rep., 1010.)

The witnesses Fielder and Dr. McKnight both testified to the location of the wounds on the deceased, describing them. In his twelfth bill he complained that Fielder was asked: "There was one shot just back of the eye; it went in toward the front of the eye?" He claims that he objected to that. The bill shows no answer of the witness. The court, in approving the bill, says that the only objection made was: "We object to that, and we ask the court to instruct the jury to disregard it."

In bill No. 19 it is shown that Dr. McKnight testified: "His wounds were in the back, in the left shoulder, part of them, and then the right side of the neck and in his right eye." Q. "From what direction did it enter the eye, the one at the eye?" A. "It seemed to me—it did not seem to enter straight; it come at an angle. It did not come straight in; it came from the rear." Appellant claims that he objected to this. The court, in allowing the bill, stated that the only objection made was: "Unless you can state positively, we do not want any conclusions, and we object." We think this testimony was admissible. (Waite v. State, 13 Texas Crim. App., 180.)

The testimony showed that deceased, at the time he was killed, carried a small handbag, or grip. Appellant testified that just before, and at the time he first shot deceased, in substance, that he thought deceased was attempting to open that grip, and he thought he did, and got something out of it, which he thought was, or might be, a pistol, and he claimed he afterwards found a pistol there on the ground. It was, therefore, relevant and pertinent for the State to prove, as it did, by different witnesses that deceased was afflicted with asthma, and that when he was to be away from home any length of time he always took with him said grip, or handbag, in which he carried a funnel, asthma medicine and a saucer, in which he burned the medicine and inhaled it for his asthma, and that he never carried, and had no pistol on this occasion in said grip. Appellant's objections to such testimony, shown by his bills Nos. 13, 14 and 21, show no error. All that testimony was admissible, whether objected to by appellant or not. In his thirteenth bill he claims he objected to the testimony of Fielder to the effect that deceased suffered with asthma, and that if he was going to be gone for any length of time he always saw him have that grip with him. The court states that the defendant made no objection whatever to that testimony, and his bill No. 14 shows that the State asked Fielder what deceased carried in that grip, and he answered that when he got to deceased after he was shot down, he found that grip at him. He took it up and shook it, and something rattled in it, but he did not know what it was, and that it was a very light something. The court says the only objection he made to that was that the witness had not said that he knows it. His bill No. 21 shows that Mrs. Thompson was asked how frequently deceased took that grip with him. She replied that everywhere he went if he was to be gone any length of time, as long as five hours. The court says the only objection appellant made to this was that it was immaterial and irrelevant and had no bearing on the case.

In appellant's bill No. 15 he claims that because one of his witnesses, Mrs. Angel, testified, in substance, that she told defendant that deceased's daughter, Ethel Thompson, told her deceased had a gun to waylay appellant, and that Mrs. Thompson, deceased's wife, said she did not know whether deceased had a gun or not, and if he did, she did not know where he got it, and that Ethel said she did not know either, but she believed he had a gun, and that she told appellant the night

before the killing the next morning also, that Ethel said she looked for her papa when appellant came out of the church the evening before, to go to cutting or shooting him, it was inadmissible for the State to prove by Ethel and her mother that they neither said to Mrs. Angel what she claimed they said to her. Appellant's contention even with or without any qualification by the court is not correct. The State had a right to have the witness testify, as he claims they did, notwithstanding Mrs. Angel had told appellant what he claims she told him. The court, however, in the qualification of the bill, states that it does not state the facts as they occurred; that the record does not show that Ethel Thompson ever testified with reference to any statement made to Mrs. Angel, and appellant made no objection to her testimony.

Appellant's daughter, Eula, testified that she was in the house at home at the time she heard the shots by her father which killed deceased, but that at the time she saw neither her father, nor deceased. His bill No. 16 claims that he asked her where she would judge it to have been fired with reference to the house; that the county attorney objected, and the court said: "The witness don't know where her father was," and sustained the objection of the county attorney. The bill in no way shows the materiality of this testimony, nor what the answer of the witness would have been. Hence, it shows no error, but the court in qualifying it, stated that the witness answered that the appellant was by the mail box in front of the house at the time the gun was fired; that she had testified that she knew that from the sound of the gun. Then the county attorney asked her if she haw him at the time he shot, and she answered, "No"; and that, thereupon, the court remarked: "The witness don't know where her father was, and I will sustain the objection," further stating that the testimony was not withdrawn from the consideration of the jury. In no event does this bill show reversible error.

In his bill No. 17 he claims that the witness Watts testified he had seen Thompson with a little handbag, and when he would come to his house for a few days he would bring it with him. He was then asked: "How much of the time did he carry that satchel around with him?" And, among other things, he answered what he had heard him say about it. Upon his objection, at the request of the county attorney, the court excluded and withdrew from the jury said testimony of the witness as to what deceased said. This bill shows no reversible error.

His bill No. 18 shows that he introduced as one of the witnesses John Angel, who gave material testimony for him. On cross-examination, the State was permitted to ask, and the witness to answer, that theretofore he had been indicted and convicted for an assault and attempt to murder his wife. Upon objection by the appellant, the court excluded that testimony from the jury, which was error against the State. Clearly, the State had the right to ask him, and require him to answer, this question for the purpose of impeaching him. All the authorities so hold.

The State proved by Mr. Blizzard and others that just a few days before the homicide what appellant had said of his intention and con-

clusion to kill deceased. This testimony was clearly admissible, notwithstanding it also became necessary and proper to tell what Blizzard and the other witnesses said to deceased at the same time and in the same conversation. The court, however, says of the bill (No. 20) that the only objection he made was: "We object to all this conversation and ask the court to rule on it"; and that he stated no grounds or reasons for the objection.

Appellant claims in his bill No. 22 that he objected to the testimony of Mrs. Thompson that deceased when he left home just before he was killed, was dressed just like he always was; the only thing he had with him was a grip and his asthma medicine, a funnel and saucer in it; that he used the funnel to inhale the smoke when burning the medicine, a powder for that. This testimony was admissible under the circumstances of this case. The court, however, states that the record shows the appellant made no objection to this testimony.

In his bill No. 23 he complains that the court excluded the testimony of J. A. Duke, which he offered on his behalf. The court refused the bill because the State made no objection of any kind to the testimony. The record shows that the testimony was admitted and not excluded. Even if we could consider the bill, it shows no error.

There is nothing else for review.

The judgment is affirmed.

*Affirmed.*